UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TANYA D. o/b/o L.J.B.,[1]

        Plaintiff,

v.                                      21-CV-06090-LJV
                                          DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____

On February 1, 2021, the plaintiff, Tanya D. ("Tanya"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that her child, L.J.B., was not disabled. *Id.* On December 20, 2021, Tanya moved for judgment on the pleadings, Docket Item 6; on May 10, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 7; and on June 21, 2022, Tanya replied, Docket Item 8.

For the reasons that follow, this Court denies Tanya's motion and grants the Commissioner's cross-motion.[2]

_____

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

I.   THE ALJ'S DECISION

On March 4, 2020, the ALJ issued a decision finding that L.J.B. had not been under a disability since Tanya filed her application on August 14, 2017.  *See* Docket

Item 5 at 19-25. The ALJ's decision was based on the three-step sequential evaluation process under 20 C.F.R. § 416.924(a). *See id.*

At step one, the ALJ found that L.J.B. was an adolescent and had not engaged in substantial gainful activity since Tanya filed her application on August 14, 2017. *Id.* at 20. At step two, the ALJ found that L.J.B. suffered from several severe, medically determinable impairments: "migraine headaches; attention deficit hyperactivity disorder, hyperactive-impulsive type ["ADHD"]; anxiety disorder; and oppositional defiant disorder." *Id.*

At step three, the ALJ found that L.J.B.'s severe, medically determinable impairments did not meet, medically equal, or functionally equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 20-25. More specifically, the ALJ found that L.J.B. had: (1) no limitation in acquiring and using information; (2) less than a marked limitation in attending and completing tasks; (3) less than a marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) less than a marked limitation in the ability to care for himself or herself; and (6) less than a marked limitation in health and physical well-being. *Id.* at 22. As such, the ALJ found that L.J.B. had not been under a disability since August 14, 2017, and that Tanya was not entitled to Supplemental Security Income. *Id.* at 25.

## II.     ALLEGATIONS

Tanya argues that the ALJ erred by giving "no meaningful explanation" about how he assessed L.J.B.'s degree of functional impairment in each of the six relevant

domains, thereby "failing to compare L.J.B.'s functioning to that of similar-aged peers." *See* Docket Item 6-1 at 6-9.  For the reasons that follow, this Court disagrees.

### III.  ANALYSIS

"For a child's impairment to functionally equal a listed impairment" at step three, "the impairment must result in marked limitations in two domains of functioning or an extreme limitation in one domain." *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009) (quoting 20 C.F.R. § 426a(a)) (internal quotation marks omitted).  "A marked limitation is more than moderate but less than extreme and interferes seriously with a child's ability to independently initiate, sustain, or complete activities.  An extreme limitation is more than marked and interferes very seriously with a child's ability to independently initiate, sustain, or complete activities." *Id.* (internal quotation marks and citations omitted).

"When reviewing a child's impairments for functional equivalence, adjudicators must consider all of the relevant evidence, and employ a 'whole child' approach." *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 291 (W.D.N.Y. 2021) (alteration, internal quotation marks, and citation omitted).  "This approach requires the ALJ to consider a child's everyday activities, determine all domains involved in performing them, consider whether that child's medically determinable impairment accounts for limitations in activities, and determine what degree such impairment limits that child's ability to function age-appropriately in each domain." *Id.* at 291-92 (internal quotation marks and citation omitted).

In this case, the ALJ found L.J.B. to have no limitation or less than a marked limitation in all six functional domains.  *See* Docket Item 5 at 22.  And contrary to

Tanya's argument, Docket Item 6-1 at 6-7, the fact that the ALJ stated his conclusions in a bullet-point format is not grounds for remand. *Cf. Elizabeth R. o/b/o J.D.R. v. Comm'r of Soc. Sec.*, 2023 WL 2325885, at *3 (W.D.N.Y. Mar. 2, 2023) (holding that ALJ correctly employed "whole child" approach and rejecting plaintiff's argument that "the ALJ failed to even discuss the domains individually, give a definition of each domain and the age-appropriate expectations, or give a summary of [the child's] functioning within each domain" (internal quotation marks omitted)).  In fact, while the ALJ stated his conclusions in bullet points, he explained those conclusions by addressing the record in some detail. *See* Docket Item 5 at 22-25. So the question simply is whether the ALJ's assessment of L.J.B.'s six functional domains is supported by substantial evidence.

Based on a review of the record and the ALJ's decision, this Court concludes that it is. In assessing L.J.B.'s degree of functional limitation, the ALJ relied on the opinions of a consultative examiner, Christine Ransom, Ph.D.; a review examiner, L. Serbonich, Psy.D.; and L.J.B.'s special education teacher, Kate Van Cura. *See* Docket Item 5 at 23-24. And as the ALJ found, those opinions supported his findings in the six functional domains.

Dr. Ransom examined L.J.B. on November 29, 2017. *See id.* at 313-16. She noted that Tanya "indicates that medication and counseling are effective" and that L.J.B.'s "[s]igns and symptoms of ADHD are currently in remission for most of the day." *Id.* at 313. Dr. Ransom also noted that "[t]here are no signs of generalized maladaptive behavior but mild signs of hyperactivity toward the end of the school day, which actually

5

do not disrupt functioning but concern [Tanya] that things may get worse if she does not react right away." *Id.*

Dr. Ransom found that "[L.J.B.] will show mild episodic difficulties attending to, following[,] and understanding age-appropriate directions[;] sustaining concentration to complete age-appropriate tasks[;] adequately maintain[ing] appropriate social behavior[;] respond[ing] appropriately to changes in the environment,[;] learn[ing] in accordance with cognitive functioning[;] ask[ing] questions and request[ing] assistance in an age-appropriate manner[;] be[ing] aware of danger and tak[ing] needed precautions[;] and interact[ing] adequately with peers and adults." *Id.* at 315. Dr. Ransom concluded that the results of L.J.B.'s evaluation were "consistent with a psychiatric condition of a mild nature that will not significantly interfere with [L.J.B.'s] ability to function on a daily basis." *Id.* In other words, Dr. Ransom found that L.J.B had no more than mild limitations in virtually all domains used to assess functional equivalence.[3]

Dr. Serbonich assessed L.J.B.'s mental impairments as a part of the initial disability determination, *see id.* at 76-79, and reached conclusions similar to those of Dr. Ransom. More specifically, Dr. Serbonich found that L.J.B. appeared to suffer

---

[3] The only domain that Dr. Ransom does not address in some way is that of moving about and manipulating objects. *See* Docket Item 5 at 315. Because she is a psychologist, Dr. Ransom did not address whether L.J.B. had any degree of limitation in that domain, which is based not on any mental or behavioral abilities but on gross and fine motor skills. *See* 20 C.F.R. § 416.926a(j). Nevertheless, Ms. Van Cura found that L.J.B. had no problems moving about and manipulating objects, Docket Item 5 at 302, and there is no evidence in the record that L.J.B. was limited in this functional area. In fact, L.J.B. was at one time on his school's basketball team, *see id.* at 59-60, suggesting that L.J.B.'s gross and fine motor skills were appropriate for L.J.B.'s age, *see* 20 C.F.R. § 416.926a(j)(2)(v).

"[s]ustained concentration and persistence limitations" as well as "[s]ocial interaction limitations" but concluded that L.J.B.'s mental impairments were not severe, "caus[ing] no more than minimal functional limitations." *Id.* at 76-77. So neither of the two psychologists who offered opinions found that L.J.B. had any significant functional issues.

On October 9, 2019, Ms. Van Cura completed a teacher's questionnaire comparing L.J.B.'s degree of functioning with that of same-aged children without impairments. *See id.* at 298-305. Ms. Van Cura noted that L.J.B. had "problems" in three of the six domains: acquiring and using information, attending and completing tasks, and interacting and relating with others. *Id.* at 299-303. But Ms. Van Cura described L.J.B. as "pretty independent" and "need[ing] occasional support in rephrasing of test/quiz questions so [he or she] understands what's being asked." *Id.* at 299. She said that L.J.B. "[n]eeded occasional prompts to refocus or short breaks to refresh [his or her] attention ability" and "[did] better when being worked with [one-on-one]." *Id.* at 300. And she noted that while it had not been necessary to implement behavioral modification strategies, L.J.B.'s "consistency in [doing certain activities] varies daily, or sometimes, a couple times a day." *Id.* at 301.

In light of the ALJ's discussion of the opinions of Dr. Ransom, Dr. Serbonich, and Ms. Van Cura, this Court is assured that the ALJ based his decision on substantial evidence. *Cf. Teena H. o/b/o N.I.K.*, 521 F. Supp. 3d at 292 ("The Court has reviewed the ALJ's written determination, as well as the administrative record, and finds that the ALJ's determination is supported by evidence."). To begin, the ALJ certainly did not err to L.J.B.'s detriment by concluding that L.J.B. was *more* restricted in his or her degree

of functioning than Dr. Ransom and Dr. Serbonich opined.  *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020); *see also Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("It appears the ALJ credited Plaintiff's testimony that she could not focus and was easily distracted . . . and assessed a more generous limitation of 5% off-task time.  The fact that the ALJ afforded Plaintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand.").  In other words, finding that L.J.B. had more than the minimal and insignificant limitations about which both psychologists opined was not error, nor did it require a finding that L.J.B. was disabled.

Likewise, Ms. Van Cura's opinion that L.J.B. had "problems" in three domains did not require a finding of an "extreme" limitation in any domain, or a "marked" limitation in more than one, and therefore a finding of disability.  *See* 20 C.F.R. § 416.926a(a).  Ms. Van Cura rated L.J.B.'s degree of impairment on a scale of 1-5 in 36 different activities across each of the three domains in which she found a "problem[]."  *See* Docket Item 5 at 299-301.  Each number on the scale corresponded with a degree of severity, with "1" indicating "no" problem, "2" indicating a "slight" problem, "3" indicating an "obvious" problem, "4" indicating a "serious" problem, and "5" indicating a "very serious" problem.[4]  In the domain of acquiring and using information, Ms. Van Cura indicated that L.J.B.

---

[4] These five categories roughly correspond with the degrees of limitation used by the Social Security Administration.  For instance, a "serious" problem corresponds with a "marked" limitation.  *See* 20 C.F.R. § 416.926a(e)(2)(i) (defining a "marked" limitation as one "interfer[ing] seriously with [the] ability to independently initiate, sustain, or complete activities.").  And a "very serious" problem corresponds with an "extreme" limitation.  *See id.* § 416.926a(e)(3)(i) (defining an "extreme" limitation as one "interfere[ing] very seriously with [the] ability to independently initiate, sustain, or complete activities.").

had a serious problem in only 2 out of the 10 activities and did not have a very serious problem in any, see id. at 299; in attending and completing tasks, she indicated that L.J.B. had a serious problem in only 1 of the 13 activities and did not have a very serious problem in any, see id. at 300. In the domain of interacting and relating with others, Ms. Van Cura found that L.J.B. did not have a serious or very serious problem in any of the 13 activities. See id. at 301.

The ALJ appropriately concluded that Ms. Van Cura's finding of serious problems in only 3 out of 36 activities did not require a finding of marked or extreme limitations in L.J.B.'s abilities to acquire and use information, attend and complete tasks, and interact and relate with others. Moreover, and as the ALJ observed, L.J.B. "attained grades that ranged from 77 to 86 in [his or her] core classes" and maintained an overall 3.38 grade point average during the 2018-2019 school year. Id. at 25; see id. at 250, 287. And during the same year, L.J.B.'s "teachers reported that [L.J.B.] almost always met or exceeded [behavioral] expectations." Id. at 25; see id. at 282-85. So the finding that L.J.B. had no limitation in acquiring and using information, less than a marked limitation in attending and completing tasks, and less than a marked limitation in interacting and relating with others was supported by school records as well.

And even if that were not true—even if the school records did not support the ALJ's finding that L.J.B. did not have an extreme or marked limitation in any of the three domains that Ms. Van Cura found problematic—Dr. Ransom's and Dr. Serbonich's shared opinion that L.J.B. had no functional limitations whatsoever would support the ALJ's finding. In other words, Dr. Ransom's opinion that L.J.B. had only mild limitations understanding and following age-appropriate directions, completing age-appropriate

tasks, learning in accordance with cognitive functioning, and asking questions and requesting assistance in an age-appropriate manner, *id.* at 315, was adequate to support the conclusion that L.J.B. had less than marked limitations in acquiring and using information as well as attending and completing tasks.  Likewise, Dr. Ransom's opinion that L.J.B had only mild limitations maintaining appropriate social behavior, responding appropriately to changes in the environment, and interacting adequately with peers and adults, *id.*, supported the conclusion that L.J.B. had less than marked limitations in interacting and relating with others.  And Dr. Serbonich's opinion that L.J.B.'s mental impairments were not severe, "caus[ing] no more than minimal functional limitations," *id.* at 76, underscored those conclusions.

This is not a case like *Tiffany R. o/b/o A.E.R.S. v. Comm'r of Soc. Sec.*, 2021 WL 3722187 (W.D.N.Y. Aug. 23, 2021), on which Tanya relies.  *See* Docket Item 6-1 at 8.  In *Tiffany R.,* the court found that remand was necessary not because the ALJ provided his conclusions in bullet-point format but because the ALJ did not sufficiently explain how he reached his conclusions or provide adequate support for them.  *See Tiffany R.*, 2021 WL 3722187, at *5 ("[I]n the December 2019 decision [the ALJ] did not evaluate specific Listings in Step Two or give rationale in Step Three for the domains. . . . This Court cannot tell why, for example, [the ALJ] changed the findings for domains in moving about and manipulating objects from the 2017 to the 2019 decisions.").  There is no such issue in this case.  Here, in contrast, this Court can tell exactly why the ALJ reached the conclusions he did, and there is ample support for those conclusions in the record.

In sum, Tanya's arguments boil down to a disagreement with the ALJ's weighing of the evidence, but it is "not the function of this Court to re-weigh evidence or consider *de novo* whether [L.J.B.] is disabled." *Teena H. o/b/o N.I.K.*, 521 F. Supp. 3d at 292; *see also Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review."). The ALJ's assessment of L.J.B.'s functional limitations was supported by substantial evidence, and this Court cannot and will not second-guess it. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

## **CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, Tanya's motion for judgment on the pleadings, Docket Item 6, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 7, is GRANTED. The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated: August 4, 2023
Buffalo, New York

*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE